OPINION OF THE COURT
Kristin Booth Glen, J.
This in limine motion raises a question of apparent first impression about the use of a deposition taken of a since deceased witness without full adherence to the procedural requirements of CPLR 3113. First, however, a brief factual and procedural history is in order.
Facts
Respondent Diane Wells and James Richard Cheney are brother and sister. Diane lived with their mother, Joyce Cheney in the latter’s apartment at 300 Central Park West from the early 1990s until May 2005. During that time, Joyce purchased several large life insurance policies naming Diane as beneficiary; in addition, in June 1999, she transferred ownership of the apartment from her sole possession into joint tenancy with Diane. In 2005, Diane was arrested for assaulting Joyce, and was subsequently convicted of reckless assault in the third degree, for which she served jail time.
Following her conviction, Diane was barred from the apartment, and from contact with her mother, by an order of protection. On September 23, 2005, Joyce executed a new will naming James executor, and disinheriting Diane. Joyce died on April 26, 2007.
Procedural History
Prior to her death Joyce commenced the instant action against Diane in Supreme Court, New York County, alleging causes of action in battery, assault, intentional infliction of emotional distress, contract reformation, severance and partition, conversion, unjust enrichment, constructive trust, and breach of fidu *504 clary duty.[1] The case was assigned to Justice Rosalind Richter who decided several discovery motions, discussed below. After Joyce’s death, James, in his capacity as preliminary executor, was substituted as a party to the action. Thereafter, on motion, the action was transferred to this court where a probate proceeding is also pending.[2] On June 7, 2007, one of the insurance companies that had issued a policy on Joyce’s life brought an interpleader action in Supreme Court, naming Diane and James as defendants; after the action was transferred to this court, its petition was granted, with the proceeds of that policy deposited into this court, awaiting distribution at the conclusion of the instant action.
The Instant Motion
On April 14, 2008, Diane made a number of in limine motions,[3] including the instant motion to bar James from introducing any portion of the deposition of one Richard Lurie at trial.[4] Lurie was Joyce’s elderly cousin, who had investment responsibilities for certain family trusts. He lived in South Africa and, because of age and infirmities, was unable to travel to the United States for a deposition. Accordingly, in September 2006 James moved in Supreme Court for an order
“a. authorizing the deposition of non-party witness Richard Lurie, an individual residing in Johannesburg, South Africa. — via video conferencing;[ 5 ] or “b. In the alternative, issuing a Letter of Request, pursuant to the Hague Convention on the Taking of *505 Evidence Abroad in Civil or Commercial Matters, 28 U.S.C. 1781, to the appropriate Central Authority-designated by the Republic of South Africa to permit . . . attorneys for plaintiff, to take the voluntary deposition upon oral questions of Richard Lurie via video teleconferencing.”
On October 4, 2006, Justice Richter granted the motion to the extent of ordering, in pertinent part, that “Richard Lurie shall be deposed by video no later than 10/31/06 on a date mutually convenient to counsel and the witness.”
By subsequent order, dated November 3, 2006, based on medical affidavits submitted about Lurie’s precarious health, the court scheduled the deposition for November 7, 2006. Neither order prescribed procedures to be followed at the deposition, including who was authorized to administer the oath to Mr. Lurie.
At the video deposition, counsel for James sought to have Lurie sworn by the court reporter who was present in New York. Diane’s counsel objected, and ultimately Lurie was sworn by Malcolm Robert Johnson, a commissioner of oaths in South Africa.[6]
The transcript of the deposition indicates that Lurie was “duly sworn”; subsequent to the deposition, Lurie executed an affidavit stating that the answers given at the deposition were true to the best of his knowledge and belief. Later still he signed the deposition transcript after reviewing it for accuracy; that signature is notarized. Shortly thereafter, Lurie passed away.
Contention
Under the statutory scheme currently in effect, the deposition of a deceased nonparty witness may be used at trial “by any party for any purpose against any other party who was present or represented at the taking of the deposition” (CPLR 3117 [a] [3] [i]). This statutory exception to the hearsay rule assumes that the deposition has been taken in accordance with the provisions of article 31, thus providing an appropriate guarantee of reliability. Diane argues, therefore, that the fact that Lurie was not sworn by one of the individuals designated in CPLR 3113 *506 (a) (3)[7] requires that his deposition be excluded, citing Wilkinson v British Airways (292 AD2d 263 [1st Dept 2002]). Her reliance on that case is misplaced.
In Wilkinson, plaintiff’s counsel administered the oath to plaintiff’s sole medical witness at a deposition taken in the United Kingdom. Defendant’s counsel first cautioned plaintiffs counsel against assuming such a role, and thus preserved his objection, which he repeated subsequently to the trial court in a motion to exclude the deposition testimony. The Appellate Division tersely noted that “the court properly determined that the videotape deposition testimony is inadmissable”; nonetheless, the court afforded plaintiff “a final opportunity to conduct a proper deposition of his medical witness in conformity with the requirements of CPLR 3113 (a) (3)” (id. at 264-265). While the basis of the ruling is hardly pellucid, the Appellate Division did not suggest that CPLR 3113 (a) (3) provides an exclusive list of persons before whom foreign examinations may be conducted. Rather, inasmuch as CPLR 3113 (a) expressly prohibits a party’s attorney from administering the oath, the court appears to have referred to CPLR 3113 (a) (3) for guidance as to who is not so prohibited under the terms of the statute.
Here, of course, the witness is not available for a second deposition, nor was the oath to which he swore administered by a person prohibited from doing so by statute. Notably, as to who is permitted, as opposed to proscribed from administering the oath, the statute provides that depositions “may” — as opposed to “shall” — be taken by any of the persons enumerated therein. Whether or not the Legislature specifically intended to allow alternatives to the delineated individuals set forth in the three applicable paragraphs (in state, out of state, and out of country, CPLR 3113 [a] [l]-[3]), it is clear that the CPLR paragraphs did not, and were not intended to, abrogate the common-law hearsay exception for prior sworn testimony of an unavailable witness.[8]
*507 It is well settled that this common-law exception to the hearsay rule exists coterminously with statutory provisions, like CPLR 3117,[9] that permit the use of evidence that would otherwise be barred by the hearsay rule. (See e.g. Fleury v Edwards, 14 NY2d 334, 338 [1964] [“It is not unprecedented that the common law and the statute should continue to exist side by side”]; Freedman, New York Objections § 5:90; Weinstein-Korn-Miller, NY Civ Prac 1Í 4517.27.)
As Judge Fuld explained in his concurring opinion in Fleury,
“New York, like most Anglo-American jurisdictions, has never adopted a comprehensive scheme of evidence . . . Neither the Model Code of Evidence nor the Uniform Rules of Evidence have been considered for adoption by this State’s Legislature . . .
“Our statutory provisions cover only a few of the hearsay exceptions developed by the courts and recognized in New York . . . The fact, therefore, that the Legislature has [sanctioned one form of prior sworn testimony] does not imply a design to exclude [sworn testimony given in another tribunal]
“The common law of evidence is constantly being refashioned to meet the demands of modern litigation. Exceptions to the hearsay rules are being broadened and created where necessary. Absent some strong public policy or a clear act of preemption by the Legislature, rules of evidence should be fashioned to further, not frustrate, the truth-finding function of the courts in civil cases” (id. at 340-341 [citations omitted and emphasis added]).
As noted, the Legislature’s enactment of CPLR 3117 and, as incorporated, CPLR 3113 (a) (3), is certainly not a clear act of pre-emption which would bar the use of Lurie’s testimony here. (See 5 Frumer and Biskind, Bender’s New York Evidence § 15.14 [8] n 69 [“Nothing in any of the statutes has ever stated that the statutes pre-empted (the common law rule) ... In none of the cases . . . has a court held that the statute superseded the common law rule”].)
*508 The indicia of reliability that are served both by the statute and the common-law rule — that the prior testimony “was given under oath, referred to the same subject matter, and was heard . . . where the other side was represented and allowed to cross-examine” (Siegel v Waldbaum, 59 AD2d at 555) — are present here.
Not only was the testimony “sworn” at the time it was given, Lurie reaffirmed his understanding that it was given pursuant to solemn oath when he executed a subsequent affidavit stating that the answers he had given were true and accurate. The subject matter of the deposition was actually taken in preparation for the instant trial, and so was clearly “similar,” and Diane was represented by counsel who had full opportunity to cross-examine Lurie.
Accordingly, Lurie’s deposition is admissible subject to such other evidentiary objections as may be appropriate, and plaintiffs in limine motion is denied.

. The complaint, seeking various legal and equitable remedies, alleged that the insurance policy and title transfers were the result of Diane’s abuse of her mother, that Diane had misused a power of attorney, and that she had stolen various valuable items from her mother’s safe deposit box and removed other valuable items from the apartment.

. In that proceeding, currently in the discovery phase, Diane has objected to probate on the grounds of lack of capacity and undue influence.

. The other motions have been decided by separate decision. In the interim, the trial date was adjourned to October 22, 2008 to permit Diane Wells to retain new trial counsel.

. That testimony is clearly hearsay, and, as such, is inadmissible unless it falls within a recognized exception to the hearsay rule.

. The motion sought to avoid the time-consuming procedures prescribed by the Hague Convention because of the feared imminence of Lurie’s death. In addition, it pointed out that although South Africa is a signatory to the Hague Convention, it does not permit the voluntary deposition of a willing witness (such as Lurie) before a United States consular officer. (See Reservations and Declarations of South Africa to Hague Evidence Convention, eff Sept. 6, 1997, United Nations, Treaty Series, vol 1984, at 407-408 [1997].)

. In a subsequently filed affidavit, Johnson documented his legal authority — much like a notary public here — to administer oaths in South Africa.

. The statute provides that depositions in a foreign country “may be taken before. . . . any diplomatic or consular agent or representative of the United States, appointed or accredited to, and residing within, the country, or a person appointed by a commission or under letters rogatory, or an officer of the armed forces authorized to take the acknowledgment of deeds” (emphasis added).

. While the common-law exception is generally thought applicable to prior sworn testimony given at trial, it has been extended to administrative proceedings (e.g. Matter of Hill v Ancram Paper Mills, 202 App Div 36 [3d *507 Dept 1922]), and depositions (e.g. Siegel v Waldbaum, 59 AD2d 555 [2d Dept 1977]; see 5 Framer and Biskind, Bender’s New York Evidence § 15.14 [1], [8] n 69).

. The cases cited subsequently involve CPLR 4517, the statutory hearsay exception for use of prior trial testimony, but there is no basis for treating CPLR 3117 any differently.